CHESTER (RIGGS v.). See Case No. 11,823.

---

## Case No. 2,662.

CHESTER et al. v. WELLFORD et al.

[2 Flip. 347.] [1]

Circuit Court, W. D. Tennessee. Feb. 22, 1879.

REMOVAL—PRO CONFESSO NO BAR—INDISPENSABLE PARTY—TRUSTEE NOT SUCH—REMOVAL OF CAUSES—CASE IN JUDGMENT.

1. A pro confesso, taken by complainant at return term, does not operate to prevent the removal of a cause, under the act of 1875 [18 Stat. 470], into the federal court.

2. The jurisdiction of the court cannot be defeated because the plaintiff cannot obtain full relief by the suit brought as to all parties against whom relief may be needed, but only when it cannot be had against a non-resident defendant without the presence of some resident defendant, whose presence is indispensable.

3. Where a citizen of Tennessee filed a bill in equity against an insurance company chartered by Missouri to cancel certain policies of insurance, loan and interest notes for an account of premiums and dividends and to en-

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

join a sale of his land under a deed of trust given to secure the loans, and the trustee was a citizen of the same state with the complainant: *held*, that the cause was removable as a controversy wholly between citizens of different states, and that the trustee was not an indispensable party.

[Distinguished in Chester v. Chester, 7 Fed. 3.]

Motion to remand.

J. B. & F. H. Heiskell, for plaintiff.
Wright & Folkes, for defendants.

HAMMOND, District Judge. This bill in equity was filed in the chancery court of Madison county, November 29, 1877, process and publication being returnable to January 7, 1878, the first day of the next succeeding term. On the fourth day of the term, no answer being filed, a pro confesso was taken by the plaintiff before the clerk and master, and the cause set for hearing by him, ex parte under the provisions of the Code of Tennessee (section 4370), which enacts that in such a case "the cause may be set for hearing at the return term of the process."

Subsequently, and on January 14, 1878, at the same term, the court by consent of parties set the pro confesso aside, and the defendants answered separately. The Life Association of America, the non-resident defendant, filed its petition and bond for the removal of the cause into this court, on June 28, 1878, prior to the next succeeding or July term of the court. The first ground of the motion to remand is that the petition to remove was filed too late. The act of congress of March 3, 1875 (18 Stat. 470), requires that the petition for removal shall be filed "before or at the term at which said cause could be first tried and before the trial thereof." It is argued that this was the January term, 1878, because the cause having stood for hearing on the pro confesso at that term it was the one at which it could have been first tried, and that the subsequent action of the court setting aside the pro confesso has not changed this attitude of the case.

It will be observed that this order pro confesso was taken on the very first day on which the defendants were in default for want of an appearance, namely, the fourth day of the term at which the process was returnable. Code, § 4350. If by taking this advantage the plaintiffs be allowed to defeat a removal of the cause into this court, it comes to this, that the defendant must file his petition for removal, or otherwise make his appearance, on or before the first moment of the first day on which he would be in default for want of such appearance, or it is within the power of the plaintiff to altogether defeat the right secured to him by this act of congress, and this although the court may subsequently, on good cause shown, set aside the pro confesso and permit him to make his defense. Id. § 4375. And so the right of the plain-

tiff to a removal may be defeated by the defendants taking some such advantage of his first default. In practice this would furnish a very effectual means of circumventing the act of congress solely by the prompt action of the adverse party in taking advantage of defaults; and that too for no other purpose than that of defeating this right of removal; because, for all other purposes the default could be avoided, while for this only it would become irrevocable, as the jurisdiction of this court is entirely gone if once defeated by such means. And thus, no matter how good may be the excuse for suffering a default, while sufficient to justify the court in requiring that no advantage shall be taken of it for any other purpose, it becomes ineffectual to avoid the absolute forfeiture of the right of removal. It seems to me that it was not intended, by the phraseology used in the act, and relied upon here, to place the right of removal so completely at the mercy of the adverse party. The right would be of little value if it could be so readily defeated by an adversary on the alert to prevent its exercise. See Hunter v. Royal Canadian Ins. Co. [Case No. 6,909].

I think the right of either party to remove a cause into this court under the act of 1875, is not within the control of the other party by any proceeding he can take prior to a final disposition of the cause. If a party seeking a removal has been guilty of such laches as entitles his adversary to a final judgment in the state court before the petition for removal has been filed, it may be that he cannot file the petition till after he has by proper proceedings reinstated his right to appear and defend, but whenever he has that right and issues are made up for adjudication by the court, he may remove those issues into the federal court, by filing a petition and bond for that purpose at the first term of the state court at which the suit is triable by the practice of the court, and before the trial thereof. Taking a decree pro confesso is in no sense a trial of the cause, as the taking of a judgment by default was held to be in construing this act of congress in the case of McCallon v. Waterman [Id. 8,675]; for, by the very sections of the Code relied on here, notwithstanding the case was set for hearing at the return term it remained to be tried, and until final decree the court had full power to reinstate the defendant to all his rights of defense. Code, §§ 4370–4375. And, after the pro confesso was set aside, the cause stood as if it had never been taken, and the first trial term was that which first came after answer filed and the expiration of the six months allowed the parties to take their proof; certainly not earlier in any event than the next succeeding term after the filing of the answer. Id. §§ 4375, 4401, 4432; Chancery Rules, No. 2, § 4. I think after a very careful consideration of the cases cited by the learned counsel for the plaintiffs, there is no conflict between those rulings and that I make here; but it would extend this judgment beyond proper limits to enter into any elaborate analysis of the facts upon which those adjudications rest. See Ames v. Colorado, C. R. R. [Case No. 325]; Scott v. Clinton S. R. Co. [Id. 12,527]; McCallon v. Waterman [supra].

The second ground for the motion depends upon the allegations of the bill and the nature of the controversy. The bill sets out that the plaintiffs insured their lives in the defendants' company by paid up policies for ten thousand dollars each. That in payment of the premiums, which amounted to $10,582.60, and for the further consideration of a loan by the company to them of $7,500, they executed their note for $18,082.30, due in five years, and likewise semi-annual notes for the interest at 10 per cent. To secure these notes they executed a deed of trust to the resident defendant, Wellford, as trustee, authorizing him in default of payment and at the request of the company to sell the lands conveyed and pay the notes. And because of the allegations of fraud contained in the bill the plaintiffs seek a rescission of the contract and to recover back the money paid to the company; or else for an account with the company to adjust an alleged equity to have certain credits which are claimed applied to the full satisfaction of the notes which are alleged to have been fully paid.

The bill asks no relief against Wellford, who resides in this state, except to enjoin him along with the defendant company from selling the land under the trust deed. The plaintiffs insist that they cannot get along against the insurance company without the presence in the suit of Wellford, the trustee; that this is, therefore, not a controversy which is wholly between citizens of different states that can be fully determined between them in this court; and that for that reason it is not within the acts of congress either of 1866 [14 Stat. 306] or 1875 [18 Stat. 470]. While the trustee is no doubt a proper party to the bill, I think he is not an indispensable party to the relief here prayed against the non-resident defendant. His presence is not in any way essential to a decree cancelling the notes, nor to a decree for an account with the insurance company, and all these matters can be adjudicated without him. Nor is it necessary to have him here in order that the insurance company may be perpetually enjoined from ever settling up or claiming any benefits under the trust deed and from seeking in any way to enforce it by a request for a sale or otherwise; and by such a decree, it seems to me very clear, that the controversy between the plaintiffs and the insurance company can be fully determined as between them, without having the trustee here. It is said he has

the legal title to the land and that it is necessary to have him here to divest himself of it in order that the plaintiffs may have full relief. I do not understand that the jurisdiction of this court can be defeated because the plaintiffs cannot get full relief by the suit here as to all parties against whom they may need relief; but only when they cannot get full relief as against the nonresident defendant without the presence in court of some resident defendant whose presence is indispensable. If the contract of the plaintiffs with the insurance company is rescinded and the notes secured are cancelled, or if on a proper accounting they are decreed to have been satisfied, there is but little if any need of having Wellford here to divest title. After such a decree if his title were not divested ipso facto, it would be the most naked and harmless of titles. It would probauly under our law divest ipso facto by such a decree, or rather to be entirely accurate, the existence of the facts which entitle the plaintiffs to a decree cancelling the notes have already divested the trustee of his title. Technically it could only revert by a reconveyance of the trusteе or by a decree upon foreclosure. But it has been held, and is well settled, that it cannot be set up against the mortgagor after the debts secured by it are paid by him, even at law. Carter v. Taylor, 3 Head. 30; Peltz v. Clarke, 5 Pet. [30 U. S.] 481; Breckinridge v. Ormsby, 1 J. J. Marsh. 237, 257; Williams v. Neil, 4 Heisk. 279, 283.

The draughtsman of tuis bill did not, it seems, think the divestiture of the trustees title necessary, for it contains no prayer to that effect. The injunction sought against him is only incidental, the injunction against the beneficiaries being equally effective. But I do not put my judgment on this ground alone. Even if the injunction against the trustee is necessary—and to divest him of title is necessary to complete plaintiffs' relief; and moreover if plaintiffs have to bring another suit to accomplish it I hold that the jurisdiction of this court will not be refused to avoid a multiplicity of suits. The only inquiry here is not, whether Wellford is a proper party. or one necessary to plaintiffs' full relief. but whether he is an indispensable party to the bill in order to afford the plaintiffs the relief they ask as against the nonresident defendant. The case of Gardiner v. Brown, 21 Wall. [88 U. S.] 36, is not in point. There the relief sought was a foreclosure of the mortgage and the presence of the trustee was indispensable to afford that relief. Not so when the case is reversed and the object is to rescind the contract or cancel the notes because they have been paid. In such a case the trustee is at most only a proper party. Such nominal parties cannot oust the federal courts of jurisdiction. Wood v. Davis, 18 How. [59 U. S.] 468.

It is not necessary for me to determine now whether the trustee has been brought here by this removal. He has not joined in the petition, and is not here asking to have that question determined. It will be time enough at the final hearing, if any relief is asked as to him, to determine whether it can be granted. As to the controversy between him and the plaintiffs he is either enjoined in the state court or here, and that is all the plaintiffs have asked as to him. If he should appear here and move to dissolve the injunction, the plaintiffs can then take the objection that the court has no jurisdiction as to him. If he should move a dissolution in the state court, that court will determine whether it has jurisdiction as to him. Not having joined in the petition and bond for removal, the question whether he has been brought along by the removal made by his codefendants. cannot arise on the motion to remand made upon the filing of their petition. Not until he takes some step assuming a jurisdiction over him, or the plaintiffs some step, asserting it, will the question properly arise. Until then, at least, I shall not be tempted to "assume the truth of the maxim that it is the duty of a good judge to enlarge his jurisdiction," as it has been said the federal judges generally do, by a learned state judge, who, somewhat loath, perhaps, to part with his own, has in a very able opinion, cited in argument here, denied, in such a case, any jurisdiction in this court over a controversy between residents of the same state. See Smith v. St. Louis Mut. Life Ins. Co., 2 Tenn. Ch. 656, 665. Mr. Justice Miller, in Taylor v. Rockefeller [Case No. 13.802]. has intimated a contrary opinion, but I need not now decide the point.

I cordially assent to what has recently been said by the supreme court of Alabama as to the considerations which should actuate the courts in the determination of these questions: Per Manning, J.—"The acts of congress for the removal of causes from the courts of the states to those of the United States, require on the part of the judges of either government, who may have to consider and act under them, candor and good temper. Jealousy of jurisdiction, when too susceptible of alarm and resentment, is apt to hurry those under its influence into error. The institutions of both governments are established for the good of all; and it is the right of all to have them preserved and upheld in the performance of their respective proper functions. When, therefore, cases arise in which the question to be decided is, whether the cognizance of them belongs to the state courts or the federal courts, it is the dictate of patriotism, as well as of law, that jurisdiction shall be cheerfully declined by those to which it does not pertain, and exercised without offensive arbitrariness by those entitled to exercise it. According to the supreme court of the United States, through the late Chief Justice Chase: 'It may be not unreasonably said, that the preservation of the states and the maintenance of their governments are as much within

the design and care of the constitution, as the preservation of the Union and the maintenance of the national government.' Texas v. White, 7 Wall. [74 U. S.] 700." Ex parte Grimball [61 Ala. 587]. The motion to remand is denied.

On the point that after order pro confesso it is not too late for petition for removal, read Hunter v. Royal Canadian Ins. Co. [Case No. 6.909.]

### CHESTS OF.

[Note. Cases cited under this title will be found arranged in alphabetical order under the quantity or number of chests; e. g. "Chests of Tea. See Six Hundred and Fifty-One Chests of Tea."]